UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAIME MARQUIT, <br><br> Plaintiff, <br><br> v. <br><br> MYLAN PHARMACEUTICALS Inc., ABC Corporations 1-10, and John Does 1-10, <br><br> Defendants. | CIVIL ACTION NO. 1:18-cv-655 <br><br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff, Jaime Marquit ("Plaintiff" or "Ms. Marquit"), by and through her attorneys, Pashman Stein Walder Hayden, A Professional Corporation, by way of complaint against Defendants Mylan Pharmaceuticals Inc. ("Mylan"), ABC Corporations 1-10, and John Does 1-10 (collectively "Defendants"), states as follows:

**NATURE OF THE ACTION**

1.    This is a civil action for damages and remedies brought by Plaintiff in connection with Defendants' refusal to hire Plaintiff based on her pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., ("Title VII") as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000E(K) ("PDA") and the New York City Human Rights Law ("NYCHRL") as amended by the New York City Pregnant Workers Fairness Act ("NYC PWFA"), N.Y.C. Admin. Code § 8-101 et seq.

## JURISDICTION AND VENUE

2.    On or about April 19, 2017, Ms. Marquit filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission, complaining of the unlawful discriminatory acts alleged herein and obtained a Notice of Right to Sue dated December 27, 2017, less than 90 days from the filing of this Complaint.

3.    This Court has jurisdiction of this action under 28 U.S.C. § 1331, 28 U.S.C. § 1332 (diversity) and under the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

4.    As Defendant regularly does business within the Southern District of New York, venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and 42 U.S.C. § 2000e-5(f)(3). Additionally, the acts that form the basis of this lawsuit occurred within this jurisdiction.

5.    Contemporaneously with instituting this lawsuit, Plaintiff submitted copies of the Complaint to the New York City Commission on Human Rights and Department of Law.

## PARTIES

6.    Currently, Ms. Marquit is an individual residing in 20 Georgian Bay Drive, Morganville, New Jersey, 07751.

7.    At all times relevant to this lawsuit, Ms. Marquit was a resident of New York City.

8.   Ms. Marquit was employed by Mylan from March 22, 2010 through November 2016.

9.   Upon information and belief, Defendant Mylan is a global healthcare company incorporated under the laws of West Virginia, with its principal executive offices located Morgantown, West Virginia.

10.  Upon information and belief, Mylan has more than 15 employees in its offices.

11.  Defendants ABC Corporations 1-10 and John Does 1-10 represent fictitious and unknown entities and persons whose conduct may have contributed to the injuries of the plaintiff, but whose identities may only become known through the course of discovery against the named defendants.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12.  On or around March 22, 2010, Ms. Marquit was hired by Mylan, who at the time was known as Dey Pharma, as a Senior Professional Sales Representative responsible for promoting Allergy and Respiratory products to allergists, pediatricians, ENTs, pulmonologists, and internal medicine physicians.

13.  At this time, Ms. Marquit's sales territory covered all of Manhattan.

14.   Approximately two years into her employment, Dey Pharma realigned its territories, divided Manhattan in half and Ms. Marquit covered Upper Manhattan territory and another sales representative covered Lower Manhattan.

15.   Ms. Marquit's territory spanned from approximately 40th Street through 120th Street on the east and west sides of Manhattan.

16.   In this role, Ms. Marquit's duties included conducting sales presentations, analyzing sales data to implement specific strategies, and formulating business plans and achieving quarterly sales goals within her assigned territory.

17.   Ms. Marquit worked within Mylan's New York District which included Long Island, Brooklyn, Queens, Bronx, Manhattan and Staten Island (the "New York District").

18.   In addition to her Senior Professional Sales Representative duties, Ms. Marquit also served as the Regional Field Trainer for her team from 2014 through 2016.

19.   In her capacity as the Regional Field Trainer in the New York District, Ms. Marquit conducted interviews with her manager, assisted new hires with on-boarding as well as mentored and trained sales representatives in the New York District.

20.   In addition, Ms. Marquit achieved numerous awards and accolades for her job performance some of which include winning the EpiPen Warehouse Dash Contest in 2016, winning the EpiPen Ped-

All to the Metal Contest in 2016, winning the Market Share Contest in 2013 and achieving President's Circle of Excellence winner in 2012.

21.   On or about October 27, 2016, Ms. Marquit was advised that she was being laid off as part of a mass layoff.

22.   Of the approximately nine (9) sales representative on Ms. Marquit's team, four (4) representative were laid off contemporaneously with Ms. Marquit.

23.   On or about November 3, 2016, Ms. Marquit sent a text message to her entire team, including her supervisor and District Manager, Rick Zaminer, advising them that she was pregnant.

24.   Subsequently, Ms. Marquit indicated that her plan was to move to New Jersey before her baby was born.

25.   On or about November 8, 2016, Ms. Marquit accepted a severance package in connection with the termination of her employment.

26.   The termination of Ms. Marquit's employment was a part of a mass layoff and did not have to do with Ms. Marquit's job performance.

27.   In fact, Mr. Zaminer prepared a letter of recommendation and offered to serve as a reference for Ms. Marquit.

28.  Finding herself unemployed and about to give birth to her first child, Ms. Marquit immediately began searching for a job.

29.  During mid-December, Ms. Marquit received messages from two former colleagues informing her that Mylan had posted a sales representative position in Midtown Manhattan – within her old territory.

30.  Ms. Marquit immediately contacted her former supervisor, Mr. Zaminer, via voicemail and text message regarding the position.

31.  Mr. Zaminer never responded.

32.  Despite being clearly qualified, Ms. Marquit was never considered for this position and the position was offered to a non-pregnant, less-qualified individual who lived almost an hour away from the territory.

33.  In January 2017, Ms. Marquit discovered that Mylan had posted an advertisement seeking to employ someone to fulfill her prior position – a Senior Pharmaceutical Sales Representative to cover a sales territory of Upper Manhattan.

34.  In spite of her prior messages inquiring about other positions at Mylan, Ms. Marquit was never contacted to interview for this position.

35.  On or about January 8, 2017, Ms. Marquit applied for this position online and on January 11, 2017, she was contacted by

Kaitlyn Rupprecht, Mylan Talent Acquisition to schedule an interview.

36.   During this call, Ms. Marquit asked Ms. Rupprecht if she was aware that Mylan was having her interview for the position from which she was just laid off and Ms. Rupprecht said they were aware and that the managers conducting the interviews were also aware.

37.   On January 25, 2017, Ms. Marquit was interviewed by four management level Mylan employees: 1. Larry Wyzykowski, Senior District Manager of New Jersey; 2. Rick Zaminer, District Manager of New York and former supervisor; 3. Joseph Osborne, Regional Director for the Northeast; and 4. Kelly Currie, District Manager of Connecticut.

38.   The morning of the interview, Mr. Wyzykowski met Ms. Marquit in the lobby to bring her upstairs for the interview.  In the elevator, Mr. Wyzykowski asked Ms. Marquit how was her commute in.

39.   Ms. Marquit responded that the commute was fine, she lived in the Village and took the subway and Mr. Wyzykowski seemed surprised.

40.   Ms. Marquit then asked where he came from and he indicated South Jersey.  Ms. Marquit then mentioned that she grew

up in Central Jersey and Mr. Wyzykowski said, maybe that's why I thought you commuted in from New Jersey.

41.  There was nothing on Ms. Marquit's resume that would indicate that Ms. Marquit lived in or came from New Jersey.

42.  Prior to this conversation, Ms. Marquit never told Mr. Wyzykowski that she lived in or came from New Jersey.

43.  Despite the fact that Ms. Marquit had worked the same territory for six and a half years, received high performance reviews for covering this territory and had good relationships with the physicians and offices in the territory, the position was ultimately offered to a non-pregnant, less-qualified candidate.

44.  Upon information and belief, Mylan re-hired all of the other sales representatives assigned to the New York District that were laid off simultaneously with Ms. Marquit.

## FIRST COUNT

### Pregnancy Discrimination in Violation of the Pregnancy Discrimination Act

45.  Plaintiff repeats and realleges all of the allegations contained in this Complaint as if separately set forth herein.

46.  The PDA prohibits the refusal or failure to hire an individual based on that person's pregnancy.  U.S.C. §§ 2000e-2(a)(1), 2000e(k).

47.   Defendants discriminated against Plaintiff when they refused to hire Plaintiff based on her pregnancy in violation of the PDA.

48.   In doing so, Defendants acted maliciously and with reckless indifference to Plaintiff's right to be free from discrimination based on her pregnancy.

49.   Plaintiff is therefore entitled to damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs for this action, and pre-judgment interest.

## SECOND COUNT

### Pregnancy Discrimination in Violation of the New York State Human Rights Law

50.   Plaintiff repeats and realleges all of the allegations contained in this Complaint as if separately set forth herein.

51.   The NYSHRL prohibits the refusal or failure to hire an individual based on that person's pregnancy.  NYSHRL §296.

52.   As outlined above, Defendants discriminated against Plaintiff when they refused to hire plaintiff based on her pregnancy in violation of NYSHRL §296.

53.   In doing so, Defendants acted maliciously and with reckless indifference to Plaintiff's right to be free from discrimination based on her pregnancy.

54.   Plaintiff is therefore entitled to damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs for this action, and pre-judgment interest.

### THIRD COUNT

**Pregnancy Discrimination in Violation of the New York City Human Rights Law**

55.   Plaintiff repeats and realleges all of the allegations contained in this Complaint as if separately set forth herein.

56.   The NYCHRL prohibits the refusal or failure to hire an individual based on that person's pregnancy.  NYCHRL §8-107(22).

57.   As outlined above, Defendants discriminated against Plaintiff when they refused to hire plaintiff based on her pregnancy in violation of NYCHRL §8-107(22).

58.   In doing so, Defendants acted maliciously and with reckless indifference to Plaintiff's right to be free from discrimination based on her pregnancy.

59.   Plaintiff is therefore entitled to damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs for this action, and pre-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered against Defendant, as follows:

(a)  declaring that the acts and practices complained of herein are in violation of the Pregnancy Discrimination Act, the New York State Human Rights Law, and the New York City Human Rights Law.

(b)  directing Defendants to make Plaintiff whole for all earnings she would have received but for Defendants' discriminatory and unlawful conduct, including, but not limited to, wages, bonuses, front-pay and other lost employment benefits.

(c)  Directing Defendant to pay Plaintiff compensatory damages for, mental anguish, emotional distress, and humiliation.

(d)  Directing Defendants to pay Plaintiff punitive damages for their intentional disregard of and reckless indifference of Plaintiff's rights.

(e)  Awarding Plaintiff the costs of this action together with reasonable attorneys' fees and

(f)  Awarding such other further relief as this Court deems just and equitable.

## JURY DEMAND

Pursuant to F.R.Civ.P.38, Plaintiff hereby demands a trial by jury on each and every issue so triable.

**PASHMAN STEIN**
A Professional Corporation

Dated: January __, 2018

By: _____
Maxiel L. Gomez

**PASHMAN STEIN**
A Professional Corporation
Court Plaza South
21 Main Street
Hackensack, New Jersey 07601
(201) 488-8200
MGomez@pashmanstein.com